UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MIGUEL RAMOS,

       Plaintiff,

                                            PRISONER
V.                                    CASE NO. 3:11-CV-1616(RNC)

ANGEL QUIROS, et al.,

       Defendants.

INITIAL REVIEW ORDER

Plaintiff, a Connecticut inmate proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Named as defendants, in their official and individual capacities, are twenty-one officials and employees of the Department of Correction ("DOC") at the following three facilities where the plaintiff has been incarcerated: Corrigan Correctional Institution ("CCI");[1] Northern Correctional Institution ("NCI");[2] and Garner Correctional Institution ("GCI").[3] The plaintiff claims that DOC personnel have been deliberately

---

[1]  The CCI defendants are Warden Scott Erfe and Jane/John Doe Mental Health Supervisor.

[2]  The NCI defendants are former Warden Angel Quiros, former Deputy Warden Lauren Powers, Dr. Carson Wright, Dr. Gerard Gagne, Clinical Social Worker Odette Bogle, Correctional Officer Clark, Dr. Mark Frayne, Health Services Administrator Richard Furey, Dr. Susan Ducate, and Dr. Robert Berger.

[3]  The GCI defendants are Warden Scott Semple, Deputy Warden Amonda Hannah, former Unit Manager Henry Falcone, Unit Manager Robert Melms, Dr. Tom Kocienda, Dr. Tod Bogdonoff, Dr. Carson Wright, Dr. Raymond Castro, Clinical Social Worker Nancy Bertulice, and Health Services Administrator Rick Bush.

indifferent to his serious mental health needs, discriminated against him because of his mental disability in violation of the ADA, failed and refused to provide him with essential medication and treatment, retaliated against him for seeking treatment, retaliated against him for complaining and filing grievances, punished him for his mental illness, confined him in inhumane conditions, used excessive force against him in various forms, forcibly medicated him against his will in retaliation for his requests for help, and responded to his requests for help by providing him with razors and encouraging him to commit suicide. The plaintiff seeks money damages plus declaratory and injunctive relief.  For reasons that follow, the plaintiff will be permitted to proceed with regard to certain claims under 42 U.S.C. § 1983 and the ADA, but not with regard to other claims, which are legally insufficient and therefore dismissed.

Section 1915A(b)

Pursuant to 28 U.S.C. § 1915A(b), Congress has assigned to federal district courts a duty to conduct an initial review of every complaint filed by an inmate against government officials. To properly perform this initial screening, a court must review the inmate's allegations with care and consider whether they provide the basis for a claim for relief under applicable law.  A complaint states a claim upon which relief may be granted if it alleges facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  A complaint that includes only "'labels

and conclusions,'. . . 'a formulaic recitation of the elements of a

cause of action'. . . . [or] 'naked assertion[s]' devoid of

'further factual enhancement'" does not meet the facial

plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 555, 557 (2007)).  In applying this standard, *pro se*

complaints must be interpreted liberally to raise the "strongest

claims that they suggest."  *Phelan v. Thomas*, 439 F. App'x 48, 50

(2d Cir. 2011).

Plaintiff's Allegations

The forty-three page complaint alleges the following.   The

plaintiff has a known, documented history of serious mental illness

within the DOC, including numerous suicide attempts involving self-

mutilation.

In August 2010, while at CCI, the plaintiff experienced

stressors that aggravated his mental illness.  Mental Health

Supervisor John/Jane Doe, acting in concert with Warden Erfe,

signed a clearance form for the plaintiff's transfer to NCI's

administrative segregation program without doing an adequate mental

health screening.  The plaintiff was not given notice or a hearing

regarding this placement at NCI.

On August 16, 2010, the plaintiff was transferred to NCI and

placed in administrative segregation.  The NCI defendants failed to

conduct an adequate mental health evaluation before placing the

plaintiff in segregation.  Immediately following this placement,

the plaintiff's mental illness worsened due to the harsh conditions of his confinement.

The plaintiff used an intercom system provided for emergencies to repeatedly request help, explaining that he was in crisis and feeling suicidal.  When he used the intercom system to call for help, however, his requests were ignored.  On some occasions, unknown officers responded to his intercom calls with sarcasm and urged him to kill himself.  Plaintiff also submitted urgent requests in writing that went unanswered.

On October 6, 2010, the plaintiff asked for help via the intercom system.  Officer Andrews then issued him a razor, telling him, "Go kill yourself and do it right."[4]  The plaintiff used the razor to attempt suicide.  He was taken to the UCONN Medical Center for emergency treatment.  At UCONN, he received multiple sutures to close two large lacerations.  The plaintiff was then returned to NCI and placed on suicide watch in a strip cell in the infirmary. While the plaintiff was in the infirmary, defendant Andrews issued him a disciplinary report based on his suicide attempt.  The plaintiff was later found guilty and, as a result, punished for his mental illness.

After the plaintiff was discharged from the infirmary, he was placed in a cell with another suicidal inmate.  He was told that if he objected to this arrangement, he would receive another

---

   [4]  Officer Andrews is not named as a defendant in the complaint.

disciplinary report.  The plaintiff's severe depression and
suicidal thoughts were aggravated by being placed in the cell with
the suicidal inmate.  The plaintiff sought help from defendants
Frayne and Quiros but they did nothing.

On November 6, 2010, the plaintiff witnessed his cellmate
attempt suicide by cutting himself with a razor in the shower.  The
plaintiff's major depression was severely aggravated by this
incident and, as a result, he soon attempted to commit suicide by
overdosing on medication.  Correctional staff were notified.  They
sprayed the plaintiff with mace, which was punitive and
unnecessary.  He was placed in non-therapeutic, in-cell restraints,
as punishment for his suicidal actions.  While thus restrained, he
was sprayed again with a chemical agent by Lieutenant Cladio.[5]

For four days, the plaintiff was kept in full, in-cell
restraints.  The use of these restraints was unnecessary, punitive
and harmful.  As a result of the in-cell restraints, the plaintiff
was prevented from eating properly or accessing the toilet and he
soiled himself.  Defendant Frayne denied any type of relief and
forced the plaintiff to remain in soiled garments.  The prolonged
placement in these restraints without any relief produced swelling,
abrasions and pain and further worsening of the plaintiff's mental
illness.

On November 9, 2010, defendant Frayne approved removal of the

---

[5]  Like Officer Andrews, Lieutenant Cladio is not named as a
defendant in the complaint.

in-cell restraints and cleared the plaintiff for return to general population without evaluating him or providing him with needed treatment.  Thereafter, the plaintiff continued to ask for treatment.  He submitted written requests to defendants Frayne and Fuery and verbal requests to numerous members of the mental health staff.  His requests were not taken seriously.

On December 4, 2010, defendant Clark provided the plaintiff with a razor, although he knew the plaintiff was on "razor restriction," telling him, "Make sure you're dead by the time I return."  Plaintiff used the razor to try to cut an artery and was taken to UCONN Medical Center for emergency treatment, where he received fourteen sutures.  He was then returned to the NCI infirmary.

On December 6, 2010, defendant Frayne cleared the plaintiff for return to general population on behavior observation status ("BOS").  The cells for BOS are isolated and cold.  BOS is used to punish inmates with mental illness and deter them from seeking help.  Being in isolation further aggravated the plaintiff's mental illness.  On December 7, he found a sharp object in his cell and used it to cut himself.  He smeared blood and feces on his body and repeatedly slammed his head against the wall.  He was placed in restraints, denied a shower, and continued on BOS status with no mental health treatment.

In the months that followed, the plaintiff unsuccessfully sought help for his major depression and suicidal thoughts.  He

6

complained about the denial of treatment to defendants Frayne, Fuery, Quiros, Powers, Faucher and Gagne.  But proper treatment still was not provided.  The denial of mental health care aggravated the plaintiff's major depression and made him even more unstable.

The plaintiff's condition was further aggravated by his continuous placements in BOS isolation cells.  During these placements, the plaintiff was sprayed with chemical agents, and placed in four-point restraints, with no mattress and only paper to cover himself.  These placements were condoned by defendants Quiros, Powers, Faucher, Frayne, Ducate, Fuery, Berger, Gagne, and Wright, all of whom received updates and reports concerning the plaintiff's status.

On March 16, 2011, the plaintiff was given a razor by an unidentified correctional officer, who stated, "Can you please get it right this time, you're like a bad penny that won't go away, just die."  The plaintiff used the razor to attempt suicide.

On March 24, 2011, the plaintiff sought help from a female social worker, Jill Doe.  She retaliated by placing him on BOS status.

On April 14, 2011, while again on BOS status, the plaintiff attempted to hang himself.  He received a disciplinary report as punishment for his suicide attempt.  Another suicide attempt occurred on May 4, 2011, while the plaintiff was on BOS status. Plaintiff's numerous suicide attempts at NCI were known to

defendants Frayne, Gagne, Quiros, Berger, Ducate, Powers and Wright, all of whom were continually kept informed of his status.

On May 11, 2011, the plaintiff was transferred to GCI and placed in the Behavioral Engagement Unit ("BEU").  Shortly before the transfer, the plaintiff had begun a "hunger strike" to protest being placed on a "loaf diet."   The transfer to GCI occurred without prior notice and a hearing.

At GCI, a "team" was assigned to provide services to the plaintiff.  He sought mental health treatment from members of the team but they failed to help.  When his requests for help were denied, he submitted requests for administrative remedies, which were routinely denied by defendants Bogdonoff and Bush.  Without appropriate intervention, more suicide attempts followed resulting in severe injuries.

Plaintiff eventually completed the BEU program, but at the time he filed this complaint, he still was not receiving proper treatment for his severe mental illness.

Plaintiff alleges that while he was at NCI, he was medicated involuntarily on numerous occasions in retaliation for his attempts to get help.  He alleges that he was "force medicated" by defendants Frayne and Gagne prior to attending court dates.  He alleges that the medications left him heavily sedated and incoherent and rendered him legally incompetent when he appeared in court.

Discussion

The plaintiff's allegations, accepted as true and interpreted liberally as required by law, provide a sufficient basis for the following claims:

CCI Defendants:

(1) Section 1983 claims under the Eighth and Fourteenth Amendments for deliberate indifference and denial of procedural due process.  In essence, the plaintiff alleges that his documented history of severe mental illness required that he receive a rigorous mental health evaluation, notice and hearing prior to his transfer to NCI's administrative segregation program, since such a transfer involved a substantial risk of serious harm to his health and safety.

No other claims are stated against these defendants.

NCI Defendants:

(2) Section 1983 claims under the First, Eighth and Fourteenth Amendments for retaliation, deliberate indifference, inhumane conditions of confinement, excessive force, and violations of substantive and procedural due process.

(3) A claim under Title II of the ADA, which requires a plaintiff to allege: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services . . . or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont,*

340 F.3d 27, 34-35 (2d Cir.2003).   These pleading requirements are

satisfied when, as here, an inmate alleges that DOC staff denied

him mental health care, harassed him, and retaliated against him

when he attempted to complain about his treatment.   *Phelan v.*

*Thomas*, 439 F. App'x 48, 50 (2d Cir. 2011).

No other claims are stated against these defendants.

GCI Defendants

(4) Section 1983 claims under the Eighth Amendment for

deliberate indifference.

No other claims are stated against these defendants.

The complaint fails to state a claim for relief against the

defendants under the other statutes cited by the plaintiff for the

following reasons.   To state a claim under section 1981, the

plaintiff must allege that he is a member of a racial minority and

was subjected to intentional racial discrimination concerning at

least one of the activities enumerated in the statute, i.e., he was

prevented from making and enforcing contracts, suing and being

sued, or giving evidence on the basis of race.   *See Mian v.*

*Donaldson, Lufkin & Jenrette  Sec. Corp.*, 7 F.3d 1085, 1087 (2d

Cir. 1993).   The plaintiff does not allege interference with any of

the enumerated activities.   Thus, his section 1981 claim fails as a

matter of law and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Section 1986 provides no substantive rights; it provides a

remedy for the violation of section 1985.   *See Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 222 n.28 (1970)(Brennan, J., concurring

in part and dissenting in part).  Thus, a prerequisite for an actionable claim under section 1986 is a viable claim under section 1985.  No such claim is presented.  The first two subsections of 42 U.S.C. § 1985 are not relevant to this action: subsection (1) prohibits conspiracies to prevent federal officials from performing their duties; subsection (2) prohibits conspiracies to deter witnesses from participating in state or federal judicial proceedings.  The plaintiff is not a federal official and his claims are not related to participation of witnesses in judicial proceedings.

To state a claim under § 1985(3), the plaintiff must allege the following: (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws; (3) an overt act was taken in furtherance of the conspiracy; and (4) the plaintiff was injured in his person or property or deprived of a right or privilege.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).  Importantly, the plaintiff must allege that the conspiracy was motivated by a "racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Id.* at 102.

The plaintiff asserts no facts to support a plausible claim of conspiracy on the part of the defendants.  Nor does he allege that the actions of any defendant were taken because of his race or other class-based discriminatory animus.  The section 1985 claim is

therefore dismissed.  *See* 28 U.S.C. § 1915A(b)(1).  Because the plaintiff has not stated a section 1985 claim, his section 1986 is also dismissed.  *See id.*

Accordingly, the Court enters the following orders:

(1) The claims brought pursuant to 42 U.S.C. §§ 1981, 1985 and 1986 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), and the section 1983 claims for money damages against defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).[6]

(2) The claims under § 1983 and the ADA will proceed against the defendants as discussed above.

(3) Within fourteen (14) days of this order, the U.S. Marshals Service will serve the summons, a copy of the complaint [doc. #1] and this order on all the defendants in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(4)  Within fourteen (14) days of this order, the Pro Se Prisoner Litigation Office will ascertain from the Department of Correction Office of Legal Affairs the current work addresses for

_____

[6]  To the extent the plaintiff seeks to recover money damages against the defendants in their official capacities, any such claims are barred by the Eleventh Amendment and must be dismissed.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that the Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 341 (1979)(affirming that section 1983 does not override a state's Eleventh Amendment immunity).

the defendants and mail waiver of service of process request
packets to each defendant in his or her individual capacity at his
or her current work address.  On the thirty-fifth (35th) day after
mailing, the Pro Se Office shall report to the court on the status
of all waiver requests.  If any defendant fails to return the
waiver request, the Clerk shall make arrangements for in-person
service by the U.S. Marshals Service and the defendant shall be
required to pay the costs of such service in accordance with
Federal Rule of Civil Procedure 4(d).

(5)  The Pro Se Prisoner Litigation Office will send a
courtesy copy of the complaint and this Order to the Connecticut
Attorney General and the Department of Correction Legal Affairs
Unit.

(6)  The Pro Se Prisoner Litigation Office will send written
notice to the plaintiff of the status of this action, along with a
copy of this Order.

(7)  Defendants will file their response to the complaint,
either an answer or motion to dismiss, within seventy (70) days
from the date of this order.  If the defendants choose to file an
answer, they shall admit or deny the allegations and respond to the
cognizable claims recited above.  They may also include any and all
additional defenses permitted by the Federal Rules.

(8)  Discovery, pursuant to Federal Rules of Civil Procedure
26 through 37, will be completed within seven months (210 days)
from the date of this order.  Discovery requests need not be filed

13

with the court.

(9)  All motions for summary judgment will be filed within eight months (240 days) from the date of this order.

(10) Pursuant to Local Civil Rule 7(a), a non-moving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

So ordered this 27th day of September 2012.

_____/s/_____
Robert N. Chatigny, U.S.D.J.

14